IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Carol Anne Pierson,                    :

        Plaintiff,                     :

    v.                                 :    Case No. 2:05-cv-0581

St. Bonaventure University,            :    JUDGE SMITH

        Defendant.                     :


OPINION AND ORDER

On June 16, 2005, Carol Anne Pierson filed a complaint
against St. Bonaventure University ("St. Bonaventure") alleging,
*inter alia*, employment discrimination under Title VII of the
Civil Rights Act of 1964, the Civil Rights Act of 1991, and the
State of New York's Human Rights Laws.  Additionally, Ms. Pierson
alleges breach of contract and a violation of the Fourteenth
Amendment of the United States Constitution.  In September 2005,
St. Bonaventure filed a motion to dismiss, or in the alternative
a motion for summary judgment, claiming that (1) this Court lacks
personal jurisdiction over St. Bonaventure under both the Ohio
long arm statute and the Due Process Clause of the Fourteenth
Amendment; (2) the complaint fails to state a claim upon which
relief can be granted under 42 U.S.C. §1983 because St.
Bonaventure is a private corporation; and (3) venue is improper.
For the following reasons, the Court agrees that personal
jurisdiction is lacking, and it will transfer the case to the
United States District Court for the Western District of New
York.

I.

Procedurally, the jurisdictional question has been presented
to the Court by way of a motion to dismiss and, in the

alternative, a motion for summary judgment.  Each party has
supported its respective motion or response with additional
evidence, including affidavits and documents.  It is Ms.
Pierson's burden to show that personal jurisdiction exists.
Compuserve v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).
However, as here, where no evidentiary hearing is held on the
jurisdictional issue, "the Court must consider the pleadings and
affidavits in a light most favorable to the plaintiff" and the
plaintiff "need only make a *prima facie* showing of jurisdiction."
Id., citing Theunissen v. Matthews, 935 F.2d 1454, 1458-59 (6th
Cir. 1991).  The Court will analyze the parties' factual
submissions in accordance with these guiding principles.

II.

In diversity cases, federal courts apply the law of the
forum state to determine whether personal jurisdiction exists.
LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1298 (6th
Cir. 1989).  "Jurisdiction may be found to exist either
generally, in cases in which a defendant's 'continuous and
systematic' conduct within the forum state renders that defendant
amendable to suit in any lawsuit brought against it in the forum
state, or specifically, in cases in which the subject matter of
the lawsuit arises out of or is related to the defendant's
contacts with the forum."  Nationwide Mutual Ins. v. Tryg
International Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996)(internal
citations omitted).  A successful assertion of personal
jurisdiction must satisfy both the state long-arm statute, Ohio
Revised Code §2307.382, and constitutional due process.  Reynolds
v. International Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th
Cir. 1994).  Although the Ohio Supreme Court has held that the
Ohio long-arm statute was not intended to grant jurisdiction over
nonresidents to the full extent allowed by the Due Process
Clause, see Goldstein v. Christiansen, 70 Ohio St.3d 232

2

(1994)(per curium), the Court of Appeals has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" <u>Bird v. Parsons</u>, 289 F.3d 865, 871 (6th Cir. 2002), <u>quoting Calphalon Corp. V. Rowlette</u>, 228 F.3d 718, 721 (6th Cir. 2000). This Court will therefore focus on the same question.

St. Bonaventure is a non-profit corporation organized under the laws of the State of New York. It is located in St. Bonaventure, New York, which is where the employer-employee relationship that is the subject of this action originated. In 1996, Ms. Pierson was named the Dean of Education and an associate professor at St. Bonaventure after being the Dean of Education and an associate professor at Dakota State University in South Dakota. According to Ms. Pierson, to follow the diversity initiatives instituted by the President of St. Bonaventure, Ms. Pierson allegedly put serious emphasis on modernizing the Department of Education and encouraging diversity. Through this endeavor, Ms. Pierson made several moves, which included disciplinary actions against senior faculty members as a result of their alleged discriminatory practices. Ms. Pierson claims that as a result of these actions, her employment with St. Bonaventure ended in 2002. Ms. Pierson subsequently moved to Ohio.

Viewing the facts in a light most favorable to Ms. Pierson, this Court finds it appropriate to highlight Ms. Pierson's affidavit, which sets forth several alleged contacts that St. Bonaventure has with the State of Ohio. The affidavit states:

> As a former member of the administration of Defendant, I am fully aware of its extensive relationship with the State of Ohio.
>
> That the University is located in the Western most county of New York and is less than

3

sixty miles from Ohio.

That Defendant is a member of the Atlantic
Ten Athletic Conference.

That the University of Dayton is a member of
this Conference.

That Defendant has many regular athletic
events in the State of Ohio and University of
Dayton [sic].

That Defendant has a nationally known
basketball program which it derives
significant revenue from.

That its basketball team is the main source
of this revenue.

That the University of Dayton basketball
exchange with Bonaventure University is one
of its largest revenue generators for its
basketball program.

That the Defendant had to forfeit a season of
basketball in 2003 due to its improper
actions and violations of NCAA rules.

That Defendant had to pay a large fee to
University of Dayton in 2003 due to its
breach of contract and violation of NCAA
rules.

That in addition to traveling to the
University of Dayton for Basketball games,
the University travels there for all other
varsity sport games.

That the total revenue generated by this
exchange in large part funds much of its
other varsity athletic programs.

That the University has a large student
enrollment from the State of Ohio.

That it is estimated that about 100 students
are currently and continuously enrolled from
the State of Ohio at the University.

4

> That Defendant has attempted to derive
> revenue from training teachers for the State
> of Ohio.
>
> That Defendant had established contacts with
> specifically the Cleveland, Ohio, school
> districts to establish partnerships for
> teacher [sic].
>
> That, specifically, in my last two years at
> SBU, the undergraduate enrollment department
> targeted Cleveland Catholic high schools for
> recruitment to the undergraduate programs.
>
> That I was introduced to Padua Franciscan
> High School in Parma and made a trip there to
> begin to establish a site where SBU
> undergraduates in teacher education could
> perform their early field experience and have
> an Ohio student teaching experience.
>
> That Alumni organizations of the Defendant
> are active in the Ohio area and attempt to
> solicit and boost economic ties between the
> University and the State of Ohio.
>
> That Defendant has an ongoing and systematic
> business relationship with the State of Ohio
> in which it derives a significant source of
> its income.

Affidavit of Carol Anne Pierson at ¶¶14-33.

In the instant case, Ms. Pierson alleges that this Court has both specific and general jurisdiction over St. Bonaventure. This Court will begin by analyzing whether specific jurisdiction exists.

A.  Specific Jurisdiction

Specific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contracts with the forum state. See Conti v. Pneumatic Prod. Corp., 977 F.2d 978, 981 (6th Cir. 192). Under International Shoe v. Washington, 326 U.S. 310 (1945), and its progeny, the Sixth Circuit Court of

Appeals has created a three-part test to determine whether
specific jurisdiction may be exercised in compliance with the
requirements of the Due Process Clause.

> First, the defendant must purposefully avail
> himself of the privilege of acting in the
> forum state or causing a consequence in the
> forum state.
>
> Second, the cause of action must arise from
> the defendant's activities there.
>
> Third, the acts of the defendant or
> consequences caused by the defendant must
> have a substantial enough connection with the
> forum state to make the exercise of
> jurisdiction over the defendant reasonable.

Southern Machine v. Mohasco Industries, 401 F.2d 374, 381 (6th
Cir. 1968).

This Court will begin its analysis with the second prong of
the Southern Machine test.  In Southern Machine, the Court made
it clear that the second criterion does not require "that the
cause of action formally 'arise from' defendant's contacts with
the forum; rather, this criterion requires only 'that the cause
of action, of whatever type, have a substantial connection with
the defendant's in-state activities.'" Third National Bank v.
Wedge Group Inc., 882 F.2d 1087, 1091 (6th Cir. 1989), citing id.
at 384 n. 27.  "Only when the operative facts of the controversy
are not related to the defendant's contact with the state can it
be said that the cause of action does not arise from that
contact."  Southern Machine, 401 F.2d at 38 n. 29.

> [T]o the extent that a corporation exercises
> the privilege of conducting activities within
> a state, it enjoys the benefits and
> protection of the laws of that state.  The
> exercise of that privilege may give rise to
> obligations, and, so far as those obligations
> arise out of or are connected with the
> activities within the state, a procedure

> which requires the corporation to respond to
> a suit brought to enforce them can, in most
> instances, hardly be said to be undue.

International Shoe, 326 U.S. at 319.

In the instant case, Ms. Pierson alleges employment discrimination, breach of contract, and a 42 U.S.C. §1983 claim. While Ms. Pierson alleges numerous contacts that St. Bonaventure has with the State of Ohio, which range from NCAA athletic competitions to student teaching, none of Ms. Pierson's claims have a substantial connection with St. Bonaventure's Ohio activities.  See e.g. Kerry Steel v. Paragon Industries, 106 F.3d 147, 152 (6th Cir. 1997)(no specific jurisdiction where the refusal to pay for nonconforming goods occurred in Oklahoma and the only relationship to the forum state is that the transaction involved a resident of the forum state).  Put simply, the operative facts arising out of Ms. Pierson's causes of action, all of which occurred in either New York or South Dakota, are not related to St. Bonaventure's contact with Ohio.

Because Ms. Pierson's claims fail to arise from St. Bonaventure's activities in Ohio, this Court need not address the first and third prongs of Southern Machine.  See id.; Conti, 977 F.2d at 983; LAK, 885 F.2d at 1303 ("[E]ach [Southern Machine] criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked").  Accordingly, the facts of this case are not sufficient to satisfy the due process requirements for specific jurisdiction.

### B.  General Jurisdiction

Although there have been a smattering of lower court decisions which have expressed the view that Ohio does not recognize the concept of "general jurisdiction" over an out-of-state defendant, the Courts of Appeals held otherwise.  In LSI

7

Industries v. Hubbell Lighting, Inc., 232 F.3d 1369 (Fed. Cir.
2000), the court held that, although the Ohio Long-Arm Statute
requires that, for jurisdiction to be exercised under the terms
of the statute, the plaintiff's cause of action be related to the
defendant's conduct within the State of Ohio, the Long-Arm
Statute is not the exclusive means for exercising jurisdiction
over out-of-state defendants. Rather, the Court of Appeals,
citing the Ohio Supreme Court's decision in Perkins v. Benguet
Consol. Min. Co., 158 Ohio St. 145 (1952), concluded that an Ohio
court may, independent of the Long-Arm Statute, exercise personal
jurisdiction over an out-of-state defendant if the defendant's
contact with Ohio is sufficiently continuous and systematic to
satisfy the requirements of the Due Process Clause and that such
jurisdiction was not supplanted by the subsequent enactment of
the Long-Arm Statute. LSI Industries, 232 F.3d at 1373; see also
Hunter v. Mendoza, 197 F. Supp. 2d 964 (N.D. Ohio 2002).

Unlike the specific jurisdiction inquiry, which focuses on
the relationship between the defendant's contact with the forum
state and the causes of action asserted by the plaintiff,
"[g]eneral jurisdiction exists when a defendant has 'continuous
and systematic contacts with the forum state sufficient to
justify the State's judicial power with respect to any and all
claims.'" Aristech Chemical Intern. v. Acrylic Fabricators, 138
F.3d 624, 627 (6th Cir. 1998), quoting Kerry Steel v. Paragon
Industries, 106 F.3d 147, 149 (6th Cir. 1997); see also
Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408 (1984).
Unlike the type of "minimum contacts" analysis used in the
specific jurisdiction inquiry, a finding of general jurisdiction
involves "a more stringent minimum contacts test," Metropolitan
Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d
Cir. 1996), and "the standard for establishing general
jurisdiction is 'fairly high,' Brand v. Menlove Dodge, 796 F.2d

8

1070, 1073 (9th Cir. 1986), and requires that the defendant's contacts be of the sort that approximate physical presence." <u>Bancroft & Masters, Inc. v. Augusta National, Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000).  Because of this relatively high standard, the plaintiff's burden of making a showing of contacts sufficient to satisfy the general jurisdiction requirement has been described as "difficult."  <u>Southern Systems, Inc. v. Torrid Oven, Ltd.</u>, 58 F.Supp. 2d 843, 848 (W.D. Tenn. 1999).

Because the jurisdictional inquiry is fact-intensive, <u>see LAK, Inc.</u>, 885 F.2d 1293, it is helpful to compare the facts of this case with the facts of other cases which have considered whether general jurisdiction has been demonstrated.  That comparison reveals that the type of contacts that St. Bonaventure has with the State of Ohio do not rise to the level of systematic and continuous contacts sufficient to support the exercise of general jurisdiction.

In the instant case, Ms. Pierson focuses on three types of "contacts" that St. Bonaventure has with the State of Ohio. First, Ms. Pierson highlights St. Bonaventure's participation in the Atlantic Ten Athletic Conference, which includes regular varsity sporting events with the University of Dayton, located in Dayton, Ohio.  Second, Ms. Pierson cites St. Bonaventure's recruitment of Ohio students.  Third, Ms. Pierson refers to St. Bonaventure's utilization of Ohio schools for field experience in teaching.  In analyzing these contacts, this Court refers to three cases for guidance and support.

In <u>Ross v. Creighton Univ.</u>, 740 F.Supp. 1319 (N.D. Ill. 1990), <u>rev'd on other grounds</u>, 957 F.2d 410 (7th Cir. 1992), a court determined an argument similar to Ms. Pierson's to be without merit.  The plaintiff in <u>Ross</u> filed suit against Creighton University, which is located in Nebraska, in federal court in Chicago, Illinois, claiming that Creighton's athletic

9

recruitment in Illinois, as well as its participation in an athletic conference with three Illinois schools were sufficient "contacts" to establish jurisdiction.  The court determined that the university's recruitment contacts with Illinois were not so substantial that Creighton could be deemed to be doing business in the State of Illinois.  <u>Id.</u> at 1324-25.  The court stated:

> Participating in a handful of athletic contests each year does not rise to the level of constructive presence in Illinois, because the contacts, though regular from year to year, are simply too few in number to be considered permanent and continuous.

<u>Id.</u> at 1324.

The Court of Appeals for the Third Circuit addressed similar issues in <u>Gehling v. St. George's School of Medicine</u>, 773 F.2d 539 (3d Cir. 1985).  In <u>Gehling</u>, parents of students filed an action in the United States District Court for the Middle District of Pennsylvania against a medical college located in the West Indies claiming negligence, breach of contract, fraudulent misrepresentation and intentional infliction of emotional distress.  The District Court dismissed the action for lack of general jurisdiction over all of the claims, and the Court of Appeals for the Third Circuit affirmed on that issue.

In reaching its conclusion, the Third Circuit Court of Appeals evaluated all of the contacts that the school had with Pennsylvania, which included advertisements in the *New York Times* and the *Wall Street Journal* (both of which were circulated in Pennsylvania), the fact that Pennsylvania residents matriculated into the medical college and paid tuition, a "media swing" undertaken by the medical school's Chancellor and Vice-chancellor in Pennsylvania to establish school notoriety and credibility, and joint international program with a Pennsylvania college.  The Court held that these contacts where not "continuous and

10

substantial" enough to establish personal jurisdiction over the negligence and breach of contract claims, stating:

> The *New York Times* and *Wall Street Journal* are non-Pennsylvania newspapers with international circulations, and advertising in them does not constitute "continuous and substantial" contacts with the forum state. Furthermore, the fact that some of St. George's students are Pennsylvania residents does not signify a relevant business contact. Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides. Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment. For the same reason, the fact that St. George's may be said to derive some percentage of its revenues from Pennsylvania residents in return for services provided in Grenada does not subject it to *in personam* jurisdiction.
>
> \* \* \*
>
> Nor do we find that the joint international program instituted by St. George's and Waynesburg constitutes "continuous and substantial" business activity by St. George's in Pennsylvania. St. George's is an educational institution that provides no educational services in Pennsylvania. Waynesburg is a separate entity that runs its own educational program under the supervision of its own trustees.... While one facet of this Pennsylvania-based educational program facilitates the admission of foreign students to St. George's Caribbean-based program, nothing in the record suggests that St. George's derives any income from educational services rendered in Pennsylvania.

Id. at 542-43 (internal citations omitted).

Finally, in Helicopteros, the United States Supreme Court

11

held that contacts between the nonresident defendant, Helicol, and Texas were insufficient to support the exercise of general jurisdiction. The Court noted that Helicol lacked a place of business and had never been licensed to do business in Texas. Further, the Court identified four types of contacts between Helicol and Texas: "sending its chief executive officer to Houston for a contract-negotiating session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter [located in Fort Worth] for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training." Helicopteros, 466 U.S. at 416.

Based on these contacts with the forum state, the Court noted that the first contact was a one-time event, and the second was "of negligible significance." Id. In reviewing the next two contacts, the Court explained that

> mere purchases, even if occurring at regular
> intervals, are not enough to warrant a
> State's assertion of in personam jurisdiction
> over a nonresident corporation in a cause of
> action not related to those purchase
> transactions. Nor can we conclude that the
> fact that Helicol sent personnel into Texas
> for training in connection with the purchase
> of helicopters and equipment in that State in
> any way enhanced the nature of Helicol's
> contacts with Texas.

Id. at 418.

After reviewing and comparing the facts of Ross, Gehling and Helicopteros to the instant case, this Court concludes that St. Bonaventure's contacts with Ohio are not "continuous and systematic" enough to establish general jurisdiction. First, while St. Bonaventure may participate in yearly athletic events in Ohio through its association with the Atlantic 10 Athletic Conference, participating in a handful of athletic contests each

year does not rise to the level of constructive presence in Ohio, because the contacts, though regular from year to year, are simply too few in number to be considered systematic and continuous. Similarly, like Helicol's use of the Fort Worth training facility in Helicopteros, sending athletic teams into Ohio to participate in sporting events in connection with the Atlantic 10 in no way enhances the nature of St. Bonaventure's contacts with Ohio given that the cause of action is not related to those contests.

Second, like the West Indies' medical college in Gehling, the fact that some of St. Bonaventure's students are Ohio residents does not signify a relevant business contact. Advanced educational institutions typically draw their student body from numerous states, and Ms. Pierson's theory would subject them to suit on non-forum related claims in every state where a member of the student body resides. Thus, the fact that Ohio residents apply and are accepted for admission to St. Bonaventure is of no moment. For the same reason, the fact that St. Bonaventure may be said to derive some percentage of its revenues from Ohio residents in return for services provided in New York does not subject it to *in personam* jurisdiction in Ohio.

Finally, in light of Gehling and Helicopteros, the Court reaches a similar conclusion in evaluating the "Ohio field experience" contact. Like the varsity sports teams traveling to Ohio, *supra*, sending students for a "field experience" within Ohio classrooms for training in connection with the education that they are receiving in New York in no way approximates physical presence in Ohio. Moreover, while one facet of this New York-based educational program facilitates a "field experience" in Ohio for students to learn about teaching, nothing in the record suggests that St. Bonaventure derives any income from educational services rendered in Ohio.

13

Accordingly, St. Bonaventure's contacts with Ohio are not
the type of "continuous and systematic" contacts with the forum
state which would justify Ohio's exercise of judicial power with
respect to Ms. Pierson's claims.  However, the Court notes that,
even if the type of systematic and pervasive activity within the
State of Ohio required by the general jurisdiction case law cited
*supra* had been found, a second inquiry must also be made before
the Court properly exercises such jurisdiction.  That second
inquiry relates to whether the exercise of jurisdiction over the
defendant is reasonable in light of various factors, including
the burden of the defendant of litigating in the forum state, the
interest of the forum state in the subject matter of the suit,
the interest of the plaintiff in litigating in the forum state,
judicial efficiency, and considerations of public policy.  See
Metropolitan Life Ins. Co. v. Robinson-Ceco Corp. 84 F.3d 560,
572 (2d Cir. 1996).

Here, it would be a substantial burden on St. Bonaventure to
litigate in the State of Ohio.  Ohio has little interest in this
action, given the fact that it involves an employment
discrimination and breach of contract action that took place
solely in the States of New York and/or South Dakota.  Although
Ms. Pierson does have a slight interest in litigating the case in
Ohio because she currently resides in the State, judicial
efficiency also suggests that the case may be more properly
litigated in New York and/or South Dakota, and public policy
concerns suggest that the location of the alleged conduct, which
is either New York and/or South Dakota, may be a more appropriate
place for litigation.  Therefore, even if Ms. Pierson had
succeeded in demonstrating that the contacts between St.
Bonaventure and Ohio were sufficiently continuous and systematic
to meet the first part of the general jurisdiction test, the
Court would find that the exercise of jurisdiction under the

14

facts of this case would be unreasonable and would still decline to exercise such jurisdiction.

III.

Congress has enacted several statutes that give federal courts the power to transfer cases *sua sponte*. See e.g. 28 U.S.C. §1406(a)("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); 28 U.S.C. §1404(a)("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). However, different factual scenarios are applicable to different transfer provisions. For example, because this Court concluded that it does not have personal jurisdiction over St. Bonaventure, 28 U.S.C. §1404(a) is not the applicable transfer statute. See Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)(expressly including the lack of personal jurisdiction as one of the procedural hurdles that can be remedied by a §1406 transfer); cf. Martin v. Stokes, 623 F.2d 469 (6th Cir. 1980)(a 28 U.S.C. §1404(a) transfer may not be granted unless the court has personal jurisdiction). Accordingly, this Court must determine whether "the interest of justice" warrants a transfer of this case to a different district.

When a Court is to determine whether a transfer is in the "interest of justice," several factors are to be evaluated. See, e.g. Sinclair v. Kleindienst, 711 F.2d 291, 294 (D.C. Cir.1983)(in the "interest of justice" includes whether personal jurisdiction would be obtained in the transferee court); Pittock v. Otis Elevator Co., 8 F.3d 325, 329 (6th Cir. 1993)("interest of justice" includes whether a party would be prejudiced by a

15

transfer or time barred by applicable statute of limitations).
As another Judge of this District stated when evaluating transfer
under §1406(a):

> Selection between the options of dismissal
> and transfer, for improper venue, is a matter
> within the sound discretion of the district
> court.  However, transfer in and of itself is
> generally considered to be more in the
> "interest of justice" than dismissal and,
> therefore, doubts should be resolved in favor
> of preserving the action, particularly when
> it appears that venue may be properly laid in
> the proposed transferee district.

<u>Nation v. United States Government</u>, 512 F.Supp. 121, 126-27 (S.D.
Ohio 1981).

     In the present case, neither party has argued, in the
alternative to St. Bonaventure's motion to dismiss, that this
Court should transfer the case if it lacks personal jurisdiction
over St. Bonaventure.  Nevertheless, the record suggests that the
United States District Court for the Western District of New York
may be the most appropriate venue to hear this action.  St.
Bonaventure is a New York corporation, with its principal place
of business in New York, which indicates that the District Court
for the Western District of New York has personal jurisdiction
over St. Bonaventure.  <u>See Milliken v. Meyer</u>, 311 U.S. 457
(1940)(a state has jurisdiction over those domiciled within its
borders).  Further, while the record does indicate that some
contractual negotiations may have taken place in South Dakota,
the alleged employment disputes and the employment termination
occurred in New York.  Finally, it does not appear that any party
will be prejudiced if the case is transferred instead of
dismissed.  Accordingly, because it appears that venue may be
properly laid in the Western District of New York and that doubts
should be resolved in favor of preserving this action, in the
interest of justice, the case is transferred to the United States

District Court for the Western District of New York.

IV.

In sum, this Court concludes that there is no jurisdiction, either specific or general, for it to hear Ms. Pierson's claims against St. Bonaventure.  Accordingly, this Court will not address whether Ms. Pierson fails to state a claim under 42 U.S.C. §1983 or if venue in Ohio is proper.  Thus, St. Bonaventure's motion to dismiss (doc. # 5) is GRANTED and the case is TRANSFERRED to the United States District Court for the Western District of New York.


/s/ George C. Smith
George C. Smith
United States District Judge